IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CHAD EUGENE STILES,                          )
                                             )
                Plaintiff,                   )
                                             )       Case No. 1:14-cv-00005
        v.                                   )       Senior Judge Haynes
                                             )
CAROLYN W. COLVIN,                           )
Acting Commissioner of Social Security,      )
                                             )
                Defendant.                   )

## MEMORANDUM

Plaintiff Chad Eugene Stiles, filed this action under 42 U.S.C. § 405(g), seeking judicial

review of the Commissioner's final decision denying Plaintiff's application for benefits under Title

II of the Social Security Act ("the Act"). Plaintiff applied for Disability Insurance Benefits ("DIB")

on November 3, 2010, asserting his disability since September 7, 2010,[1] due to alcoholism, anxiety,

acute gastrointestinal bleeding, anemia, thrombocytopenia, hyperbilirubinemia, bipolar disorder,

depression, loss of concentration, hematemesis, gastric varices, hypertension, peripheral neuropathy,

and leg and hip pain. (Docket Entry No. 10, Administrative Record 112-114, 136, 172-174).

Plaintiff's application was denied initially and upon reconsideration. Id. at 61-63, 70-71. Plaintiff

requested and received a hearing that an Administrative Law Judge ("ALJ") held on June 21, 2012.

Id. at 30-58, 73-74, 83-101.

---

[1] Plaintiff later amended his alleged onset date to April 10, 2011. (Administrative Record
at 131).

The ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and specifically found that:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since April 10, 2011, the amended alleged onset date (20 CFR 404.1571 et seq.).

3.  The claimant has the following combination of impairments that is severe: depression, generalized anxiety, panic disorder, bipolar disorder, history of alcohol abuse, gastric varices, peripheral neuropathy, liver disease and right hip pain. (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) that is limited to: lifting/carrying up to 20 pounds occasionally, up to 10 pounds frequently; sitting, standing or walking up to or about six hours each in an eight-hour workday with normal breaks; unlimited pushing/pulling; and frequent climbing, balancing, stooping, kneeling, crouching or crawling. The claimant has non-exertional mental limitations, but can understand, remember and carry out short, simple directions; can make judgments on simple work related decisions; can have occasional, superficial contact with the general public, co-workers and supervisors, but is better working with things rather than people; and can adapt to infrequent workplace changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on June 18, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on

the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from the amended alleged onset [date] April 10, 2011, through the date of this decision (20 CFR 404.1520(g)).

Id. at 12-20. On September 28, 2012, Plaintiff sought review of the ALJ's decision. Id. at 27-28.

On November 7, 2013, the Appeals Council declined review that rendered the ALJ's decision the Commissioner's final decision.

Before the Court is Plaintiff's motion for judgement on the Administrative Record (Docket Entry No. 12) to which the Defendant filed a response (Docket Entry No. 13). Plaintiff contends, in essence, that the ALJ erred by: (1) failing to evaluate the opinion of the Plaintiff's treating and/or examining non-acceptable medical source and not considering Plaintiff's mental health records and GAF scores; (2) failing to evaluate properly Plaintiff's credibility; and (3) failing to consider the side effects of Plaintiff's medications and how those effects limit his abilities. The Commissioner argues that the ALJ properly evaluated the proof and the ALJ's decision is supported by substantial evidence.

For the reasons stated below, the Court concludes that the Plaintiff's motion for judgement on the Administrative Record should be denied, as the Commissioner's decision to deny benefits is based upon substantial evidence and is consistent with the Act.

## A. Review of the Record

Plaintiff, who was born in 1964, asserts that his disability commenced April 10, 2011,[2] due to alcoholism and anxiety. (Administrative Record ("AR") at 10, 112, 131, 136). According to the administrative record, Plaintiff was hospitalized for alcohol withdrawal and delirium tremens from August to September 2010. Plaintiff was shaky and nervous after he stopped drinking. Id. at 234. Plaintiff also had elevated liver function test, and leukopenia/thrombocytopenia, secondary to alcohol. Id. at 210-31. Plaintiff had anemia with heme-positive stools and gastritis, secondary to alcohol. An abdominal ultrasound also revealed cholelithiasis with thickened gallbladder and evidence of obstruction. Id. at 210, 219-20. Possible cirrhosis of the liver was noted and a upper endoscopy was deemed necessary to evaluate for varices. Id. at 233-34.

From September 2010, Plaintiff was prescribed Alprazolam for his nerves, but Plaintiff continued to suffer from these symptoms. Id. at 251. In September 2010, Plaintiff was wheezing, and the attending physician recommended pulmonary function testing. Id. at 255. In October 2010, Plaintiff reported that his medications were not working and his Zoloft was causing him to shake. Id. 253. The physician's note reflects that Plaintiff "cannot work currently." Id.

In December 2010, Plaintiff complained of increased anxiety and stress due to his divorce, lack of work, and his cessation of drinking. Id. at 250. Due to his stress, Plaintiff resumed drinking

---

[2]Plaintiff originally alleged an onset date of September 7, 2010, but amended his alleged onset date to April 10, 2011 (Administrative Record 10, 112, 131).

that caused gastrointestinal complications. Id. Plaintiff reported Zoloft made him sick and caused him insomnia as well as groin/genital pain. Id. Plaintiff cited right hip pain with intermittent numbness from his hip to his foot. Id. at 250-51. In December 2010, Plaintiff went to the emergency room for gastrointestinal bleeding reflected by blood in his stools. Id. at 236-48. Plaintiff had acute GI bleeding with melena (black, tarry stools). Id.

In January 2011, Plaintiff attended Centerstone for mental health treatment. Id. at 279-82. Plaintiff was assessed as having bad mood swings, impulsivity, recklessness, frequent and extended stay in bed without eating or bathing as well as social isolation, extensive problems with focus, memory, flight of ideas, pressured speech, hyperactive behavior and difficulty adjusting to medical problems and inability to work. Id. at 281-82. Centerstones's diagnosis was bipolar disorder I with the most recent episode described as manic, severe without psychotic features, and generalized anxiety disorder as well as alcohol abuse. Id. at 279, 282.

A Tennessee Clinically Related Group (CRG) form reflects an evaluation of Plaintiff and a list of impairments in several areas of basic mental functioning. Id. at 276-78. Plaintiff had regular or frequent problems with performing daily routine activities and marked limitations in interpersonal/social functioning. Plaintiff's Global Assessment Function ("GAF") was 45, with his highest GAF the prior six months being 55, and his lowest score of 40. Id. at 278. Plaintiff was placed in Group 1 for persons with severe and persistent mental illness.

Centerstone's records reflect that, from December 2010 through April 2011, Plaintiff complained of right hip pain with radiation through his right leg with occasional numbness in his right leg and his right arm. Id. at 385-90. Plaintiff cited increased pain with lifting, sitting for too long, or walking for too long. Id. Plaintiff reported continuing anxiety and side effects from his

medications such as nausea and insomnia. Id. at 390. By April 2011, Plaintiff continued experiencing depression, mood swings, social withdrawal, irritability, anxiety, helplessness and worthlessness. Id. at 274-98, 346-84. Plaintiff's GAF score was 45, reflective of serious symptoms or serious impairment in social or occupational functioning despite his ongoing treatment. Id.

In April 2011, Plaintiff was also hospitalized for gastrointestinal bleeding, likely alcoholic liver disease, hepatitis, pancytopenia, peripheral neuropathy, hypokalemia, hypomagnesemia, and hypertension. Id. at 333. According to Dr. Maltz, "[g]iven finding on esophagogastroduodenoscopy, the patient really has bad prognosis," with "no available treatment for gastric varices." Id. at 335. Dr. Maltz stated that if Plaintiff bleeds again, there would be a very high mortality. Id.

On February 4, 2011, Dr. Darrel Ray Rinehart, a consultant, reviewed Plaintiff's medical records and found that Plaintiff did not have any physical limitations. Id. at 270-72. In April 2011, Dr. John Fahlberg, found that Plaintiff did not have severe physical impairments. Id. at 309. On June 28, 2011, Dr. Frank Pennington performed a residual functional capacity function assessment and opined that Plaintiff had severe physical impairments that limited him to a range of light work. Id. at 393-401. Earlier, in March 2011, Dr. Deborah Doineau, an educational specialist evaluated Plaintiff's records and opined that Plaintiff had mild limitations in performing simple and complex instructions without any limitations in interacting with others. Id. at 299-305.

Dr. Kimberly Tartt-Godbolt, a psychologist, reviewed Plaintiff's mental health treatment, and opined that Plaintiff retained the ability to perform simple and one-to-four-step detailed tasks, to interact effectively with others on a superficial level, and to adapt to infrequent changes, but could not make executive-level independent decisions. Id. at 310-26. Dr. Jenaan Khaleeli, a psychologist concurred. Id. at 391. The psychologists considered Plaintiff's mental health treatment from

Centerstone, including the January 2010 intake form and the GAF scores. Id. at 322, 391.

The ALJ found that Plaintiff had a severe combination of impairments of depression, generalized anxiety, panic disorder, bipolar disorder, history of alcohol abuse, gastric varices, peripheral neuropathy, liver disease, and right hip pain. Id. at 12. Yet, the ALJ did not find any of Plaintiff's impairments, alone or in combination, to satisfy any listing for disability under the Act. Id. at 12-14. The ALJ also found that Plaintiff's testimony of his disabling symptoms lacked credibility based on Plaintiff's medical treatment, the medical evidence, and the medical opinions. Id. at 14-18. The ALJ found that Plaintiff retained residual functional capacity to lift 20 pounds frequently and 10 pounds occasionally, sit for 6 hours in an 8-hour workday, and stand/walk for 6 hours in an 8-hour workday. Id. at 14. The ALJ found that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl and could follow simple instructions, make simple work-related decisions as well as have superficial contact with the general public, co-workers, and supervisors. Id. at 14. Citing vocational expert testimony, the ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy, including work as a dishwasher, a building cleaner, and a grounds worker. Id. at 19. Consequently, the ALJ found Plaintiff not disabled. Id. at 21.

The ALJ gave the opinion of Dr. Fahlberg, one of Plaintiff's treating physician, little weight as inconsistent with the record. Id. at 18. The ALJ found the other opinions cited above consistent with Plaintiff's medical treatment and objective evidence, and entitled to significant weight. Id. at 17-18.

## B. Conclusions of Law

This Court's review of the Commissioner's decision is limited to the record in the

administrative hearing process. Jones v. Sec'y, Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y, Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. Hurst v. Sec'y, Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. Miracle v. Celebrezze, 351 F.2d 361, 374 (6th Cir. 1965).

Plaintiff bears the burden to establish his entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

In the administrative review, Plaintiff's application is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

> (5) Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in

9

the national economy which the claimant could perform, given his or
her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by
relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant
is not significantly limited by a nonexertional impairment, and then only when the claimant's
characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid
cannot be used to direct a conclusion, but only as a guide to the disability determination. Id. Where
the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the
claimant's prima facie case by coming forward with particularized proof of the claimant's individual
vocational qualifications to perform specific jobs, which is typically obtained through vocational
expert testimony. See Varley v. Sec'y, Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).
In determining residual functional capacity for purposes of the analysis required at stages four and
five above, the Commissioner is required to consider the combined effect of all the claimant's
impairments: mental and physical, exertional and nonexertional, severe and nonsevere. See 42
U.S.C. § 423(d)(2)(B).

In this action, Plaintiff contends that the ALJ erred by: (1) failing to evaluate the opinion of
the Plaintiff's treating and/or examining non-acceptable medical source and not considering
Plaintiff's mental health records and GAF scores; (2) failing to evaluate properly Plaintiff's
credibility; and (3) failing to consider the side effects of Plaintiff's medications and how those
effects limit his abilities.

For Plaintiff's mental impairments, Plaintiff was not hospitalized nor placed for in-patient

treatment. (AR at 292). In some instances, Plaintiff did not comply with his treatment. Id. at 15-16.

Plaintiff allowed his medications to expire and did not attend all of his treatment appointments Id.

at 15-16, 283, 290, 418-21, 424-25. When Plaintiff took his medications properly, Plaintiff admitted

they helped. Id. at 300, 412, 427, 434; see also Ranellucci v. Astrue, No. 3:11-cv-00640, 2012 WL

4484922, at *10 (M.D. Tenn., Sept. 27, 2012) (citing Holley v. Massanari, 253 F.3d 1088, 1092 (8th

Cir. 2001)). Plaintiff's treating psychiatrist noted that Plaintiff appeared well-groomed, alert,

oriented, cooperative, and pleasant with euthymic mood, appropriate affect, normal speech, logical

thought processes, and intact concentration, attention, and memory. (AR at 270-71, 284, 294, 301,

365, 375, 415, 421, 426, 439). Plaintiff's treating psychiatrists' objective findings were that Plaintiff

had "fair" insight, id. at 284, 294, 365, 415, 421, 426, 439, and these opinions provide substantial

evidence for the ALJ's finding that the objective evidence was inconsistent with Plaintiff's

testimony. See Stankoski v. Astrue, 532 Fed.App'x 614 (6th Cir. 2013) (Plaintiff claimed crying

spells and low energy, "[y]et there was no objective evidence to support these complaints.").

Moreover, the ALJ thoroughly discusses the medical evidence of record to which he accorded

significant weight and summarizes the opinion of Dr. Kimberly R. Tartt-Godbolt, a psychologist as

follows:

> On April 6, 2011, Kimberly R. Tartt-Godbolt, Psy.D., viewed the
> medical evidence and identified diagnosed impairments including
> bipolar disorder, generalized anxiety disorder, and alcohol abuse. Dr.
> Tartt-Godbolt considered these impairments and opined that the
> claimant has: mild restriction in activities of daily living; moderate
> difficulties in maintaining social functioning; moderate difficulties in
> maintaining concentration, persistence or pace; and no episodes of
> decompensation of extended duration (Exhibit 9F). Dr. Tartt-Godbolt
> further opined that the claimant could understand and remember 1-4
> step detailed tasks, can effectively interact with the public, coworkers
> and supervisors on a superficial level, but would work better with

things rather than people and could adapt to infrequent changes (Exhibit 10F). In June 2011, Jenaan Khaleeli, Psy.D. reviewed the evidence and affirmed Dr. Tartt-Godbolt's opinion (Exhibit 14F). The opinions of Dr. Tartt-Godbolt and Dr. Khaleeli are consistent with the evidence and considered the claimant's alcohol abuse in determining the claimant's functional limitations. Their opinions suggesting no more than moderate limitations are also consistent with the claimant's reported activities including watching television, going to town once per day, going to the grocery store, visiting his brother, using the internet, reading mail, cleaning up, cooking, eating meals with family members who live nearby and attending church. Accordingly, the opinions of Dr. Tartt-Godbolt and Dr. Khaleeli are accorded significant weight. The findings of Dr. Tartt-Godbolt, as affirmed by Dr. Khaleeli, support the ability to understand, remember and carryout at least short, simple directions and make judgments on simple work-related decisions, as well as, other limitations included in the residual functional capacity above.

AR at 17 (emphasis added).

The ALJ also summarized the opinion of Dr. Frank Pennington as follows:

On June 28, 2011, Frank Pennington, MD, viewed the medical evidence and identified diagnosed impairments including gastric varices without transfusions, hematemesis, chronic liver disease and peripheral neuropathy. Dr. Pennington opined that the claimant can: lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; perform unlimited pushing/pulling; and frequently climb, balance, stoop, kneel, crouch or crawl. Dr. Pennington noted some recent worsening including the episode of gastrointestinal bleeding in April 2011. Dr. Pennington noted elevated liver function tests, but without signs of symptoms of bleeding. Dr. Pennington noted that the claimant remained hemodynamically stable and did not require a transfusion. Dr. Pennington noted that the claimant's reported daily activities did not change significantly, but that he did have some fatigue and was partially credible (Exhibit 15F). The evidence of record suggests that the claimant did not require significant treatment for his history of gastroesophageal varices or chronic liver disease after April 2011. Dr. Pennington's opinion is consistent with the evidence including limited treatment for the alleged physical impairments after April 2011 and the claimant's reported daily activities of watching television, going to town once per day, going

> to the grocery store, visiting his brother, using the internet, reading
> mail, cleaning up, cooking, eating meals with family members who
> live nearby and attending church. Accordingly, Dr. Pennington's
> opinion is accorded significant weight.

AR at 18 (emphasis added).

Thereafter, the ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that
> the claimant's medically determinable impairments could reasonably
> be expected to cause some symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects
> of these symptoms are not credible to the extent that the claimant
> alleged for the reasons discussed herein.

Id.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. Moreover, the ALJ specifically noted the significant weight he accorded to the medical opinions of Drs. Tartt-Godbolt, Khaleeli, and Pennington, the opinions most consistent with the record as a whole. Though Plaintiff complains of disabling impairments, the ALJ noted that Plaintiff's reported daily activities were consistent with these doctors' less-restrictive opinions. The ALJ's rationale acknowledged evidence that could support Plaintiff's subjective complaints of the limiting effects of his impairments, but elected to rely on the substantial medical findings that were inconsistent with Plaintiff's proof.

Plaintiff contends that the ALJ erred by failing to examine "Tennessee Clinically Related Group (CRG) evaluation." Plaintiff contends that his CRG evaluation proves "marked impairments in several areas of basic mental functioning," that he was "placed in Group 1 for persons with severe and persistent mental illness," and that he "was assessed with a GAF score of 45." (Docket Entry

No. 12-1, Plaintiff's Brief in Support of Motion for Judgment on the Administrative Record at 11-12). In Plaintiff's view, the ALJ mentioned this CRG and SSR 06-3p, but fails to explain why he discounted these opinions. Plaintiff notes that "Centerstone's mental health therapists and/or counselors completed these evaluations assessing his limitations in these areas on mental functioning," and these limitations were opined based on "Plaintiff's treatment relationship [with] Centerstone." Id. Plaintiff also argues that his "poor concentration and expected rate of absenteeism" were not properly considered, as the VE testified that these factors would preclude him from working at all. Id. at 12-13. Finally, Plaintiff contends that the ALJ failed to evaluate properly his mental health treatment records, and "erroneously discredited [his] GAF scores due to them not changing, rather than considering the fact that [Plaintiff's] treating providers felt this to be his continued level of functioning and limitations despite treatment and compliance due to his persistent symptoms." Id. at 13-14. Plaintiff also argues that his mental health treatment notes and his GAF scores are consistent with his subjective complaints. Id. at 15.

The relevant Regulations provide that the ALJ may properly:

> "use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
>
> (2) Educational personnel (for example, school teachers, counselors, early intervention team members, development center workers, and daycare center workers).

20 C.F.R. § 404.1513(d). Yet, SSR 06-03p also provides that:

> Information from these 'other sources' cannot establish the existence
> of a medically determinable impairment. Instead, there must be
> evidence from an "acceptable medical source" for this purpose.
> However, information from such "other sources" may be based on
> special knowledge of the individual and may provide insight into the
> severity of the impairment(s) and how it affects the individual's
> ability to function.

SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

As an initial matter, the ALJ noted that on January 19, 2011, Wolfgang Wyk, M.A.,
completed an intake form for Centerstone indicating that Plaintiff had marked limitations in
interpersonal functioning, adaptation, and concentration, persistence, and pace. Id. at 15, 276-77.
Wyk also assigned Plaintiff a GAF score of 45. Id. at 15, 278. The initial intake form, however, was
completed three months prior to his alleged onset date, while Plaintiff continued to abuse alcohol,
and before Plaintiff started treatment with a mental health specialist. Id. at 15. Wyk's statements in
the intake form were inconsistent with Plaintiff's subsequent treatment records after his alleged onset
date. See 20 C.F.R. § 404.1527(b)(3)-(4).

Moreover, Plaintiff's mental health treatment provider, Wolfgang Wyk, M.A., is not an
"acceptable medical source" as listed in 20 C.F.R. § 404.1513(a). Thus, Wyk's opinion cannot be
considered a "medical opinion," nor can Wyk be considered a "treating source." See 20 C.F.R. §§
404.1502, 404.1527(a)(2). At the intake, Plaintiff could not maintain his concentration, but he had
intact attention and concentration after he started treatment. Id. at 277, 282, 284, 365, 415, 421, 426,
439.

Plaintiff's treating psychiatrist noted that Plaintiff appeared well-groomed, alert, oriented,
cooperative, and pleasant with euthymic mood, appropriate affect, normal speech, logical thought
processes, and intact concentration, attention, and memory. Id. at 270-71, 284, 294, 301, 365, 375,

415, 421, 426, 439; see also Stankoski 532 Fed.App'x 614. Plaintiff's treating psychiatrists' objective finding was "fair" insight, id. at 284, 294, 365, 415, 421, 426, 439. This evidence is substantial evidence for ALJ's finding that the objective medical evidence was inconsistent with Plaintiff's testimony

Plaintiff also cites records from Plaintiff's first appointment at Cornerstone, including a Tennessee Clinically Related Group (CRG) form completed on January 19, 2011 (AR at 276-278), that reflect that Plaintiff has moderate functioning impairments in activities of daily living, marked interpersonal functioning limitations, marked concentration, task performance, and pace limitations, and marked limitations in his ability to adapt to change. Id. This form also notes that this combination of limitations has lasted six months or longer. Id. It determines that Plaintiff falls into Group 1, meaning that he is considered a "Person with Severe and Persistent Mental Illness." Id. The form notes the assessment was completed as an intake form. Id. The form notes that Plaintiff's current GAF score was 45, his highest GAF score within the previous six months was 55, and his lowest GAF score within the previous six months was 40. Id.

The ALJ discussed Plaintiff's history of mental health treatment from Cornerstone and in his opinion stated:

> On January 19, 2011, the claimant presented to Centerstone Mental Health (Centerstone) with complaints of mood swings. The claimant reported that he drank to stabilize his mood, but he developed ulcers and cut back on his consumption. Wolfgang Wyk, M.A., made a diagnosis of bipolar disorder, generalized anxiety disorder and alcohol abuse and estimated a Global Assessment of Functioning (GAF) score of 45 at that time, with marked limitations in interpersonal functioning, adaptation and concentration, persistence and pace (Exhibit 6F, 12F).

AR at 15.

As to Plaintiff's GAF score, the ALJ summarized that:

In this case, the claimant's estimated GAF scores did not change after the initial visit despite treatment notes that suggest general stability when the claimant was compliant and participating in treatment, as discussed herein below. On February 23, 2011, and March 7, 2011, the claimant failed to show for [] follow up appointments. On March 23, 2011, the claimant reported that he occasionally drank beer, that his sleep is okay and his appetite is fine. The claimant was noted to be well groomed and calm with an appropriate affect and had intact attention, remote memory, concentration and judgment. Nevertheless, Centerstone reported that the claimant had a Global Assessment of Functioning of 45 at that time (Exhibit 6F). In April, 2011, the claimant complained of having nothing to do everyday, so he remained at home and socialized with family. At that time, the claimant reported that he was only occasionally consuming alcohol. On the claimant's mental status exam, he was described as well-groomed, cooperative, euthymic, had an appropriate affect and had intact concentration, recent memory, remote memory, attention and judgment. Nevertheless, his GAF score remained at 45 (Exhibit 17F at 41). In May 2011, the claimant reportedly denied drinking and denied having suicidal ideation, was sleeping okay and had a fine appetite. The claimant also reported that he felt worthless and had a lack of energy. Again, the claimant's mental status exam revealed that he was cooperative, euthymic, had an appropriate affect and had intact concentration, recent memory, remote memory, attention and judgment. The claimant was noted [to] make good eye contact and reported activities including socializing with friends, cooking, cleaning, grocery shopping, watching movies and driving. The claimant reported plans to visit Gatlinburg for vacation (Exhibit 17F at 33). On June 15, 2011, the claimant cancelled [an] appointment. On June 20, 2011, the claimant reported that he was doing much better and was not using alcohol to cope. The claimant was described as friendly and reported that he was staying active and talking with his girlfriend. On June 21, 2011, the claimant reported that he had a good trip to Gatlinburg with family and feels better. On August 16 and August 29, 2011, the claimant failed to show for scheduled appointments. On September [20], 2011, the claimant reported that he was doing alright, but had depression and lack of energy. The claimant's mental status exam revealed that he was cooperative, euthymic, had an appropriate affect and had intact concentration, recent memory, remote memory, attention and judgment. On October 11, November 21, 2011, the claimant failed to show for scheduled

appointments. The claimant also failed to show for his scheduled appointment on January 10, 2012. On February 14, 2012, despite missing treatment for a few months, the claimant reported that he was doing much better, and reported no mood swings, no depression, no mania and no change in his daily activities. The claimant reported some anxiety, but his mental status exam revealed that he was cooperative, euthymic, had an appropriate affect and had intact concentration, recent memory, remote memory, attention and judgment.

Id. at 16.

After considering Centerstone treatment notes, the state agency medical consultants found Plaintiff capable of a range of simple work with limited interactions with others. Id. at 322, 391. The ALJ may consider the opinions of non-examining state agency medical consultants. See Gustafson v. Comm'r of Soc. Sec., 550 Fed.App'x 288, 289 (6th Cir. 2014) (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)); Justice v. Commissioner of Social Sec., 515 Fed.Appx. 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."); see also Social Security Ruling ("SSR") 96-2p (finding of fact and opinions by non-examining State agency doctors is expert evidence that must be considered). The ALJ's decision considered physicians' and consultants' opinions in evaluating the record as a whole. Id. at 15-16. As such, the ALJ's decision is supported by substantial evidence. Id. at 13, 15, 17.

As to whether the ALJ properly evaluated Plaintiff's GAF score, GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. revision 2000) ("DSM-IV-TR"). A GAF of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning.

DSM-IV-TR 34. The record reflects the ALJ's consideration of Plaintiff's GAF scores. Id. at 15-16,

285, 295, 366, 407, 422, 427, 440. Practitioners used the GAF score in making treatment decisions.

See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th

ed. revision 2000).

Yet, neither Social Security regulations nor decisional law require an ALJ to determine the

extent of an individual's mental impairment based solely on a GAF score. The Commissioner has

declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and

noted that such scores do not have a "direct correlation to the severity requirements of the mental

disorders listings." See 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (August 21, 2000). The

Sixth Circuit has upheld this policy. See DeBoard v. Comm'r of Soc. Sec., 211 Fed.App'x 411, 415

(6th Cir. 2006); see also Kornecky v. Comm'r of Soc. Sec., 167 Fed.App'x 496, 511 (6th Cir. 2006)

("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock

in a GAF score in the first place."). The Sixth Circuit has found scores as low as and lower than

Plaintiff's GAF as insufficient to support a finding of disability. See DeBoard, 211 Fed.App'x at 415

("Accordingly, we have affirmed denials of disability benefits where applicants had Global

Assessment Functioning scores of 50 or lower.") (collecting cases).

The ALJ found Plaintiff's GAF scores of 45 to be inconsistent with Plaintiff's medical record

as a whole. (AR at 16). The ALJ explicitly stated that Plaintiff's "treatment notes suggest general

stability when the claimant was compliant and participating in treatment." Id. The ALJ clearly

considered these GAF scores in his review of the evidence of record and discounted them due to

their inconsistencies with Plaintiff's treatment records:

>  While the GAF scores are an attempt to get a reading of the

clinician's assessment of the patient's functioning and are useful in planning treatment, the numbers assigned are rather vague and do not readily correspond to how the Social Security Administration assesses disability in terms of severity requirements. These ratings are not part of a standardized test and are not an assessment of the claimant's mental status and/or limitations on [his] mental status (DSM-IV); but are used to track the clinical progress of an individual on global terms. These scores are not indicative of the response to treatment and medications over time. They are just one piece of data and must be considered in the context of the record as a whole to obtain a longitudinal picture of the overall degree of functional limitation based on the extent to which the impairment interferes with the ability to function independently, appropriately, effectively, and on a sustained basis.

Id. at 15-16. Thus, the ALJ found that Plaintiff's conditions were controlled when he complied with his medication regimen and, specifically, that the unchanging GAF scores were inconsistent with the remainder of Plaintiff's treatment records. See Gault v. Comm'r of Soc. Sec., 535 Fed.App'x 495, 496 (6th Cir. 2013) (ALJ properly "rejected the conclusion that Gault had marked mental limitations on the basis that it conflicted with her benign clinical examinations, conservative course of treatment, and daily activities. Thus, viewed in context, the ALJ adequately explained that he accepted Allred's opinion that Gault had some mental limitations, but rejected that those limitations were disabling").

Plaintiff next contends that in discounting his credibility, the ALJ failed to specify the weight accorded to the Plaintiff's allegations and testimony, and further failed to provide sufficient basis for rejecting his subjective allegations. Plaintiff further contends that his subjective allegations are consistent with and supported by the medical evidence of record, including the treatment notes and opinions of his treating sources at Centerstone. Plaintiff argues that because the ALJ did not give a reasonable basis for discounting his testimony, so his allegations must be accepted as true.

Defendant responds by contending that the ALJ properly determined that Plaintiff's allegations regarding his limitations were not totally credible, as he found them to be inconsistent with the record as a whole, including his medical treatment, the medical evidence, and the medical opinions. Defendant notes that Plaintiff received routine treatment regarding his physical impairments for alcohol-induced gastric varices, but on his amended alleged onset date, he stopped drinking and required no further treatment for this impairment. Regarding Plaintiff's mental impairments, Defendant notes that Plaintiff required no hospitalizations or in-patient treatment, was not compliant with his treatment, allowed his medications to run out and did not present to all of his appointments, and when he did comply, the medication helped him.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition <u>and</u> (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

<u>Duncan v. Sec'y, Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986) (quoting S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); <u>see also</u> <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."); 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled . . . "). Moreover, "allegations of pain...do not constitute a disability unless the pain is of

such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."

Bradley v. Sec'y, Health & Human Servs., 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. See Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); Blacha v. Sec'y, Health & Human Servs., 927 F.2d 228, 230 (6th Cir. 1990); Kirk v. Sec'y, Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ summarized Plaintiff's testimony as follows:

> The claimant testified, inter alia, that: he lives by himself; he received unemployment compensation until 6 months before his hearing; he worked in April 2012 running a forklift, but the work only lasted about 3 or 4 weeks; he has panic attacks; he has pain in his back and legs; [he] has trouble gripping with his right hand; he stopped consuming alcohol on April 9, 2011; he drank heavily in the past and consumed a similar amount during his off duty hours even when he worked; he received mental health treatment at Centerstone; Dr. Lewis has treated his back pain; he has pain and numbness in his feet, he used to go grocery shopping, he buys/sells guitars on the internet; and he has stomach disorders with some abdominal pain.

AR at 18.

Here, the ALJ considered Plaintiff's daily activities; the duration, frequency and intensity of

Plaintiff's pain; the dosage, effectiveness, and side effects of his medication; any precipitating and aggravating factors; and Plaintiff's functional restrictions. See 20 C.F.R. § 404.1529. Plaintiff's medical records reflect that Plaintiff received routine treatment for his impairments. Prior to Plaintiff's amended onset date, Plaintiff sought treatment for gastric varices related to his alcoholism (AR at 210-19, 233-34, 236-42, 330-41). Yet, by his onset date, Plaintiff stopped drinking and did not require additional treatment for the impairment. Id. at 15, 40, 330-41. See Helm v. Comm'r of Soc. Sec., 405 Fed.Appx. 997, 1001 (6th Cir. 2011) (Modest treatment is "inconsistent with a finding of total disability.").

In evaluating the entirety of the evidence, the ALJ must weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. Walters, 127 F.3d at 531; Kirk, 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. Walters, 127 F.3d at 531 (citing Villarreal v. Sec'y, Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. Id. If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony, and the reasons must be supported by the record. See Felisky, 35 F.3d at 1036; King v. Heckler, 742 F.2d 968, 975 (6th Cir. 1984). Here, the ALJ observed Plaintiff during his hearing, assessed Plaintiff's medical records, and reached a reasoned decision that is supported by substantial evidence and thus, the ALJ's decision not to accord full credibility to Plaintiff's testimony was proper under the Act.

Plaintiff next argues that the ALJ erred by failing to consider the side effects of his medications when determining his RFC. Plaintiff cites his problems with Zoloft that he no longer takes. Plaintiff contends that the record evidence documents his reports of insomnia and feeling sick due to his medications, as well as shaking, as side effects of his medications. Thus, the ALJ should have considered these side effects and their limiting effects on his ability to work. In response, the Commissioner contends that the record as a whole does not support Plaintiff's allegations of side effects, as he no longer takes the medication he claims was giving him problems, the records he cites as evidence were completed before he alleged onset date, and since his medication changed, he repeatedly denied any side effects.

In Plaintiff's records from the Medical Clinic of Lewisburg LLC, dated December 22, 2010, Plaintiff complained of anxiety and negative side effects from medications. TR 250-51. Specifically, the report notes:

> He came to us seeking meds for his anxiety. He has been taking Zoloft (25 mg bid for about 5 months) but it makes him sick. He does not sleep well at night due to the Zoloft. He has pains in his groin and genitalia areas, which he believes are side effects of the Zoloft.

Id. Moreover, the doctor's notes from his appointment on December 22, 2010 record that "Zoloft causes him to shake." TR 253.

The ALJ discussed Plaintiff's problems with Zoloft:

> The claimant alleges that he is disabled because of alcoholism, anemia, liver disease, gastric varices, hypertension, neuropathy and hip pain. The evidence of record dates back to May of 1999, when the claimant was receiving routine care with the Medical Clinic of Lewisburg and AJ Medical Services, Inc., (Exhibit 4). More recently, the claimant received care at the facility [] in September of 2008 for hypertension, including a prescription for Lisinopril. In September of 2010, the claimant sought follow-up care, after a reported

hospitalization, which includes a prescription for Alprazolam for anxiety (Exhibit 4F, page 5). The claimant returned in December of 2010 with complaints of anxiety. The claimant indicated that he was filing for disability and was stressed over a divorce and lack of work and had been drinking heavily in the past to deal with stress. The claimant was also noted to be non-compliant with taking blood pressure medication.

AR at 14-15. The ALJ also cited Centerstone's records, dated February 9, 2011 and March 21, 2011, that Plaintiff reported no side effects from his medications. Id. at 284, 293.

Under the Act, the ALJ must consider any significant limitation on Plaintiff's "physical and mental ability to do basic work related activities." See 20 CFR 404.1520(c). The medical records cited by Plaintiff are prior to his amended onset date. Id. at 131. Thereafter, Plaintiff's medication changed and Plaintiff denied any side effects Id. at 284, 293, 365, 415, 421, 426-27, 439. Moreover, Plaintiff's more recent medical records from Centerstone indicate that Plaintiff did not have any negative side effects. Thus, the ALJ was not required to discuss the side effects of Plaintiff's medications, as it is no longer an issue. Accordingly, the ALJ did not err on this issue. See Hopkins v. Comm'r of Soc. Sec., 96 Fed.Appx. 393, 395 (6th Cir. 2004) (where side effects of drowsiness, nausea, and blurred vision due to medication are "not documented in the record" denial of disability affirmed).

As to the existence of a significant number of jobs that a person with Plaintiff's RFC could perform, the vocational expert testified an individual with Plaintiff's limitations could perform work existing in significant number in the national economy. (Tr. 19, 54-55). The ALJ found such number with jobs such as a dishwasher, a building cleaner, and a grounds worker. (Administrative Record 14, 19, 54-55). The ALJ incorporated his credibility determinations on Plaintiff's RFC in his hypothetical to the vocational expert. Id. at 14, 19, 54-55. The ALJ's hypothetical question must

reasonably describe the claimant's impairments, but only those impairments and limitations the ALJ found to be credible. The Secretary may rely upon a vocational expert's answer to a hypothetical question only if substantial evidence supports the assumptions included in the hypothetical question. Felisky, 35 F.3d at 1036; Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987). Here, the ALJ properly determined that Plaintiff was capable of other work and, thus, not disabled.

Plaintiff notes the vocational expert testified that poor "concentration, persistence or pace" over two hours and "absenteeism" would preclude him from working at all. (Docket No. 12-1, Plaintiff's Brief in Support of Motion for Judgment on the Administrative Record at 12-13). Yet, the vocational expert's answer was in response to Plaintiff's counsel's hypothetical questions on the limitations Plaintiff would have if those conditions were found by the ALJ. The cited potential limitations precluding Plaintiff from working were not established nor found by the ALJ. Thus, Plaintiff's counsel's hypothetical questions were not supported by substantial evidence. The ALJ found Plaintiff's unchanging GAF scores as inconsistent with Plaintiff's treatment records that suggest "general stability when the claimant was compliant and participating in treatment." AR at 16.

In sum, the Court concludes that the ALJ properly evaluated Plaintiff's credibility with the medical proof that is supported by substantial evidence that Plaintiff could perform a range of simple, light work and should be affirmed. Thus, the ALJ did not err. See Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009).

For these reasons, the Court concludes that Plaintiff's motion for judgment on the Administrative Record should be denied and that the Commissioner's decision should be affirmed.

26

An appropriate Order is filed herewith.

**ENTERED** this the _31_ day of March, 2015.

William J. Haynes, Jr.
Senior United States District Judge